IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRYAN BROTHERS )
INCORPORATED, *et al.* )
)
        Plaintiffs, )
)
v. ) Civil Action No. 3:09CV675–HEH
)
CONTINENTAL CASUALTY )
CORPORATION, )
)
        Defendant. )

## MEMORANDUM OPINION
(Cross Motions for Summary Judgment)

This is a declaratory judgment and breach of contract action regarding a professional liability insurance policy purchased by Plaintiff Bryan Brothers Incorporated ("Bryan Brothers"). The case is before the Court on a Motion for Summary Judgment by Defendant Continental Casualty Company ("Continental") and a Motion for Partial Summary Judgment by Bryan Brothers and the individual Plaintiffs.[1] All parties have submitted memoranda in support of their respective positions, and the Court heard oral argument on March 22, 2010. For the reasons stated herein, Plaintiffs' Motion is denied and Defendant's Motion is granted.

### I.

Plaintiff Bryan Brothers, an accounting firm, purchased an Accountants

---

[1] Joseph Kober, Doris Lansing, Karl Schoeller, and Mildred Schoeller will herein be referred to as "the individual Plaintiffs."

Professional Liability Policy ("the policy") from Defendant Continental Casualty Company ("Continental"). JSSF ¶ 3.[2] The policy covered claims made and reported between July 1, 2008 and July 1, 2009. JSSF ¶ 3.

Deborah Whitworth ("Whitworth") worked as a part-time account clerk for Bryan Brothers from about 1999 through February 2009. JSSF ¶ 15. Whitworth was responsible for bookkeeping and balancing the ledgers of Bryan Brothers' clients' accounts. JSSF ¶ 16. Beginning in 2002, Whitworth, while an employee of Bryan Brothers, made unauthorized withdrawals from the accounts of several Bryan Brothers clients, including Plaintiffs Joseph Kober, Karl Schoeller, and Mildred Schoeller. JSSF ¶¶ 21-30. Whitworth began making withdrawals from the account of Plaintiff Doris Lansing after July 1, 2008. JSSF ¶ 30. To accomplish the fraud, Whitworth made out checks drawn on client accounts payable to herself and others. JSSF ¶ 22. Whitworth also manipulated the internal bookkeeping records to cover her theft. JSSF ¶ 23. Bryan Brothers discovered Whitworth's unauthorized withdrawals in February 2009. JSSF ¶ 27. The parties stipulate that, prior to this time, no other Bryan Brothers employees were aware of her activities nor did any other employees participate in or authorize her actions. Whitworth committed suicide on February 11, 2009. JSSF ¶¶ 25-26.

Each of the clients whose accounts were adversely impacted by Whitworth's activities have filed separate causes of action against Bryan Brothers that have since been

---

[2]The parties submitted a Joint Statement of Stipulated Facts (JSSF).

settled. JSSF ¶¶ 31 & 34. Bryan Brothers sought coverage under the policy by notifying Continental on February 19, 2009 of its discovery of Whitworth's actions and making several claims. JSSF ¶ 32.

Continental denied coverage under the policy on March 16, 2009. Continental's denial was based on a number of purported grounds. First, Continental asserted that the claims were logically or causally connected such that they constituted interrelated claims and would be treated as a singular claim. Second, Continental maintained that Whitworth was an insured under the policy and had knowledge of facts and circumstances that could give rise to a claim prior to the effective date of the policy. Continental contended that Whitworth's failure to disclose this information constituted a failure to make a claim during the appropriate policy period and amounted to a misrepresentation of fact in the policy application such that there was no coverage under the policy for the claims arising from Whitworth's actions.

Bryan Brothers and the individual Plaintiffs then brought this action for breach of contract and a declaration by this Court that Continental had a duty to defend and indemnify Bryan Brothers for the claims arising from Whitworth's actions. Continental filed a counterclaim seeking a judicial declaration that Bryan Brothers' claims do not fall within the policy and that the claims constitute a single claim under the policy.

Continental seeks summary judgment as to all claims. Bryan Brothers requests partial summary judgment as to Counts 1, 2 and 5 (Breach of the Duty to Indemnify,

Breach of the Duty to Defend, and Declaratory Judgment, respectively) and Counts 1 and 2 of the Counterclaim (Declaratory Judgment that there is no coverage and that the claims constitute a single claim).

## II.

The Court may grant either party's motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

## III.

### A. Prior Knowledge Provision

The Court will begin its analysis by considering whether Bryan Brothers' claims

are excluded from policy coverage as a result of Whitworth's knowledge of her actions.

The terms of the policy provide that:

> In accordance with all the terms and conditions of this policy, we will pay on your behalf all sums in excess of the deductible, up to our limits of liability, that you become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both made against **you** and reported in writing to us during the **policy period** by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom you are legally liable provided that:
> [. . .]
> 2. prior to the effective date of this Policy, none of **you** had a basis to believe that any such act or omission, or **interrelated act or omission**, might reasonably be expected to be the basis of a **claim**; . . . ."

Policy at 4 (emphasis in original).

Plaintiffs argue that this provision constitutes a policy exclusion while Continental argues that it is a condition precedent. The Court submits that, as it relates to the facts of this case, this is a distinction without a material difference. As the Virginia Supreme Court has held, an insurer using exclusionary language in a policy as a defense to coverage bears the burden of showing that the exclusion applies. *Bituminous Cas. Corp. v. Sheets*, 239 Va. 332, 336, 389 S.E.2d 696, 698 (1990). Similarly, when an insurer asserts as an affirmative defense the failure of the insured to satisfy a condition precedent, the insured has the burden to produce evidence that it met the terms of the condition precedent while the insurer bears the ultimate burden of persuasion. *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 261 Va. 38, 43, 540 S.E.2d 491, 494 (2001); *Erie Ins. Exch. v. Meeks*, 223 Va. 287, 290-91, 288 S.E.2d 454, 456-57 (1982). Regardless of the label assigned to this provision, the ultimate burden of proof rests with

Continental.

The policy defines "you" and "your" as "the Named Insured and any predecessor firm and . . . any person who is or becomes a partner, officer, associate, or employee of the Named Insured but only for professional services performed on behalf of the Named Insured. Policy at 3.[3] The parties stipulate that Whitworth was considered a "you" under the terms of the policy. JSSF ¶ 10.

Continental argues that Whitworth's knowledge of her ongoing fraud prior to the policy's effective date places the claim outside of the policy's coverage. The question before the Court is whether a reasonable person in Whitworth's shoes would have a basis to believe that her actions "might reasonably be expected to be the basis of a claim." *See Hunt & Calderone*, 261 Va. at 43, 540 S.E.2d at 493-94. It is undisputed that Whitworth embezzled money from client accounts beginning in 2002. With the exception of the Lansing account, she had withdrawn money from each account prior to the policy's effective date. This Court and the Fourth Circuit have held that such intentional, illegal acts clearly demonstrate knowledge of a basis for a claim. *See Westport Ins. Corp. v. Lydia S. Ulrich Testamentary Trust*, 42 F. App'x 578, 581 (4th Cir. 2002); *Minn. Lawyers Mut. Ins. Co. v. Hancock*, 600 F. Supp. 2d 702, 707 (E.D. Va. 2009). The same logic applies in this case. The Court finds as a matter of law that a reasonable person in Whitworth's position would have a basis to believe that commission of intentional and

---

[3]The policy further defines "you" and "your," but these additional definitions are not applicable to the instant case.

illegal acts "might reasonably be expected to be the basis of a claim." As such, her knowledge clearly implicates the policy's prior knowledge provision for the claims arising from these actions.

## B. "Innocent Insureds" Provision

Plaintiffs counter that the policy's "Innocent insureds" provision ultimately saves coverage and requires Continental to defend and indemnify it for the underlying claims despite the prior knowledge provision. The policy provides that:

> If coverage under this policy would be excluded as a result of any criminal, dishonest, illegal, fraudulent or malicious acts of any of you, we agree that the insurance coverage that would otherwise be afforded under this Policy will continue to apply to any of you who did not personally commit, have knowledge of, or participate in such criminal, dishonest, illegal, fraudulent or malicious acts or in the concealment thereof from us.

Policy at 12. Under its terms, for this provision to apply, the claim must be "excluded as a result of any criminal, dishonest, illegal, fraudulent or malicious acts of any of you . . ." *Id.* Continental argues that the "Innocent insureds" provision does not apply in this case because Continental denied coverage based on Whitworth's prior knowledge of a possible claim, not her illegal activities. Plaintiffs respond that the "Innocent insureds" provision applies to coverage exclusions under both the illegal acts exclusion and the prior knowledge provision. Specifically, Plaintiffs point to the language in the "Innocent insureds" provision that protects those who did not "have knowledge of . . . [the] criminal, dishonest, illegal, fraudulent or malicious acts."

The language of this provision mirrors that in the exclusions provisions of the

7

contract. Under "Exclusions," the policy states that:

> This policy does not apply to . . .
> D.    any claim based on or arising out of a dishonest, illegal, fraudulent, criminal or malicious act by any of you. . . .

Policy at 7. Both provisions include the same "dishonest, illegal, fraudulent, criminal or malicious" acts language. As such, the "Innocent insureds" provision would appear to provide coverage that would otherwise be excluded by this exclusion provision. There is no reference in the "Innocent insureds" provision to non-coverage resulting from prior knowledge of basis for a claim, and the Court is unable to conclude that the "Innocent insureds" provision can preserve coverage that is denied for prior knowledge.[4]

The Court finds that Continental denied coverage under the prior knowledge provision of the policy based on Whitworth's prior knowledge. This conclusion is supported by the text of Continental's March 16, 2009 letter of denial. Among the reasons in the letter for Continental's denial of coverage was Whitworth's prior knowledge of reasonable basis for a claim. Absent from the reasons for denial of coverage is any mention of the illegal acts exclusion. With respect to Plaintiffs' argument regarding the language protecting those without knowledge of the dishonest, illegal, fraudulent or malicious acts, the Court finds this argument unpersuasive. The "Innocent insureds" provision initially specifies when the provision takes effect and, second, if it

---

[4]As Defendant noted at oral argument, nothing prevented Bryan Brothers from bargaining for a policy that included a more limited prior knowledge provision or a broader "Innocent insureds" provision.

does take effect, who is protected. As outlined above, the provision never takes effect because of Continental's denial of coverage based on prior knowledge. Accordingly, the Court need not reach the second half of the provision addressing who is protected.

Plaintiffs argue that the "Innocent insureds" provision is ambiguous and must be construed against Continental. "[L]anguage is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992). Specifically, Plaintiffs argue that the phrase "excluded as a result of any criminal, dishonest, illegal fraudulent or malicious acts of any of you" is ambiguous because "excluded" could have two different meanings–first that it falls under one of the policy's explicit "Exclusions" and second that it is excepted from coverage. Plaintiffs parse the words too minutely and attempt to invoke "a strained [and] unjustified construction of the policy" that "disregards the plain meaning and intent of the parties," which the Supreme Court of Virginia has counseled against. *Quesenberry v. Nichols*, 208 Va. 667, 672, 159 S.E.2d 636, 640 (1968). The Court finds that the "Innocent insureds" provision is unambiguous and applies to exclusions based on the "dishonest, illegal, fraudulent, criminal or malicious act[s]" exclusion in the policy.

## C. Lansing Claim

With the exception of withdrawals from the account of Doris Lansing, Whitworth began making unauthorized withdrawals from client accounts prior to July 1, 2008, the

9

effective date of the policy. Whitworth began taking funds from Lansing's account after July 1, 2008. JSSF ¶ 30. As discussed above, Whitworth's knowledge of her activities prior to the policy's effective date precludes insurance coverage for the claims from the other clients. With regard to the claim by Lansing, it is unknown whether Whitworth had an intent or a plan to take money from Lansing's account prior to July 1, 2008. Continental argues that the insurance policy excludes coverage for the Lansing claim because it, along with the other authorized withdrawals, are "interrelated acts or omissions." Returning to the prior knowledge provision, the policy grants coverage unless "prior to the effective date of this Policy, none of you had a basis to believe that any such act or omission, or **interrelated act or omission**, might reasonably be expected to be the basis of a **claim**." The policy defines "interrelated acts or omissions" as "all acts or omissions in the rendering of **professional services** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." If the Lansing claim is interrelated to the other claims, then Whitworth's prior knowledge of the other unauthorized withdrawals also gave Whitworth "basis to believe" that the Lansing withdrawals "might reasonably be expected to be the basis of a claim" as an interrelated act.

Plaintiffs argue that the definition of "interrelated acts or omissions" is ambiguous and must be construed in favor of the insured. Again, "language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the

same time." *Bottoms*, 243 Va. at 234, 415 S.E.2d at 134. Of the courts that have considered whether this policy language is ambiguous, each has found that it is not ambiguous. *See, e.g., Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 812 (10th Cir. 2009); *Professional Solutions Ins. Co. v. Mohrlang*, Civil Action No. 07-cv-02481-PAB-KLM, 2009 WL 321706, at *9 (D. Colo. Feb 10, 2009); *Continental Cas. Co. v. Orr*, No. 8:07CV292, 2008 WL 2704236, at *5 (D. Neb. July 3, 2008); *Continental Cas. Co. v. Law Offices of Melvin James Kaplan*, No. 01 CH 4483, 2005 WL 583733, at *4 (Ill. Cir. Feb 3, 2005). Similarly, this Court holds that the policy language related to "interrelated acts or omissions" is not ambiguous.

The Court will next turn to whether the unauthorized withdrawals from Lansing's account is "interrelated" to the unauthorized withdrawals that took place before July 1, 2008. Again, the Court must determine whether the Lansing withdrawal and the other withdrawals are "logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." Most obvious is that the Lansing withdrawals, like the prior unauthorized withdrawals, involved the <u>same</u> scheme to defraud Bryan Brothers' clients by the <u>same</u> person wherein Whitworth drafted checks drawn on the client accounts and endorsed checks made payable to the clients. JSSF ¶ 22. Whitworth also used the same modus operandi in concealing her theft by manipulating Bryan Brothers' records. JSSF ¶ 23. These common ties lead to the inescapable conclusion that Whitworth's thefts against Lansing are logically connected to the prior

11

thefts by common facts and circumstances. They are "interrelated acts" under the policy for which there is no coverage.

### D. Bad Faith Claim

Count Three of Plaintiffs' complaint alleges that Defendant's refusal to defend or indemnify Bryan Brothers for its claim was done so in bad faith and that Bryan Brothers is entitled to costs and attorney's fees under Virginia Code § 38.2-209. Continental asks for summary judgment on this Count. Plaintiffs argue that the Court does not yet have before it the necessary factors to consider this claim and that the parties agreed that their motions for summary judgment would not address the bad faith claim.

While the Court is of the initial opinion that "[t]here can be no bad faith in refusing to defend where there is no coverage under the policy," *Brenner v. Lawyer's Title Ins. Corp.*, 240 Va. 185, 192, 397 S.E.2d 100 104 (1990), the Court wishes to respect the agreement of the parties. Accordingly, the Court need not formally reach the merits of Plaintiffs' bad faith claim at this stage in the proceedings.

## IV.

In conclusion, Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted in all respects except the Plaintiffs' bad faith claim. The Court finds that Bryan Brothers' insurance claim does not fall within the coverage of the Continental policy and that the underlying claims are "interrelated claims" under the terms of the policy.

An appropriate Order will accompany this Memorandum Opinion.

                                                        /s/
                                           Henry E. Hudson
                                           United States District Judge

Date: March 25, 2010
Richmond, VA